UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| STEVE COLEMAN,<br><br>     Plaintiff<br><br>v.<br><br>BRIAN WARD, et. al.,<br><br>     Defendants | Case No.: 3:18-cv-00061-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 29 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 29, 29-1 to 29-8, errata at ECF Nos. 32-1 to 32-3.)[1] Plaintiff filed a response. (ECF No. 33.) Defendants filed a reply. (ECF No. 34.)

After a thorough review, it is recommended that Defendants' motion be granted.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 5.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*)

---

[1] Defendants also filed a notice that they submitted Plaintiff's mental health records *in camera*. (ECF No. 30.) The *in camera* filing consisted of a single record. The court did not consider the mental health record in connection with its analysis of the issues presented in the motion for summary judgment because the substance of the mental health evaluation is not germane to resolving the motion.

Plaintiff filed his original complaint (ECF No. 4), which the court screened on March 5, 2019. (ECF No. 3.) Plaintiff alleged that he was assaulted by another inmate which required that he be transported to a local hospital. After he returned to the prison, he claims he was transferred to administrative segregation where he stayed for four months. He sent kites asking Powers, Ward, Moyle, Henley and Castro why he was being held in administrative segregation without a hearing, but got no response. The court allowed Plaintiff to proceed with a due process claim against Powers, Ward, Moyle, Henley and Castro, based on his placement in administrative segregation for four months without a hearing. His equal protection claim and Eighth Amendment failure to protect claims were dismissed with leave to amend. (ECF No. 3.)

Plaintiff filed an amended complaint (ECF No. 5), which the court screened. Plaintiff was again allowed to proceed with his due process claim against Powers, Ward, Moyle, Henley, and Castro. The equal protection claim was dismissed with prejudice. To the extent Plaintiff alleged that Lieutenant Brandon or Baca failed to protect him in violation of the Eighth Amendment, these claims were dismissed. Plaintiff did allege that on the date of his attack, he saw Does 1 and 2 enter the gun post and they watched the attack unfold without doing anything to intervene. The court allowed Plaintiff to proceed with an Eighth Amendment failure to protect claim against Does #1 and #2. (ECF No. 6.)

On November 6, 2019, the Attorney General's Office accepted service on behalf of Castro, Moyle, Powers and Henley. (ECF No. 13.) Ward was not served, and was subsequently dismissed without prejudice. (ECF No. 27.)

Plaintiff filed a motion to file a second amended complaint (SAC) and proposed SAC. (ECF Nos. 22, 22-1.) The court denied the motion on April 23, 2020, finding that amendment would be futile. The court directed that the case would proceed as outlined in the order screening

1  the FAC, except as to Ward who has been dismissed without prejudice. In addition, the court
2  gave Plaintiff until June 16, 2020, to file a motion identifying and substituting in the defendants
3  for the two Doe defendants. (ECF No. 28.)
4      As of today's date, Plaintiff has not filed a motion identifying and substituting in
5  defendants for the two Doe defendants; therefore, the Eighth Amendment failure to protect claim
6  against Does 1 and 2 should be dismissed without prejudice.
7      Defendants now move for summary judgment, arguing: (1) Plaintiff received due process
8  for his administrative segregation placement; (2) Defendants are entitled to qualified immunity;
9  and (3) Plaintiff failed to properly exhaust his administrative remedies.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose

of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Due Process Standard**

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To invoke its protections, an inmate "must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Once the plaintiff has established one of these interests is at stake, the court's analysis turns to whether the inmate suffered a denial of adequate procedural protections. *See Biggs v. Terhune*, 334 F.3d 910, 913 (9th Cir. 2003) (citations omitted).

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'[.]" *Wilkinson*, 545 U.S. at 221 (citing *Vitek v. Jones*, 445 U.S. 480, 493-94 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution); *Wolff v. McDonnell*, 418 U.S. 539, 556-58 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)). "[T]he Constitution itself does not

give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id*. (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).

Courts have uniformly held that placement in administrative segregation for non-punitive reasons does not give rise to a liberty interest from the Constitution itself. *See Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). As the Supreme Court explained, administrative segregation, which is "used to protect the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer" "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

"[A] liberty interest in avoiding particular conditions of confinement *may* arise from state policies or regulations, subject to the important limitations set forth in *Sandin v. Conner*, 515 U.S. 472 (1995)." *Wilkinson,* 545 U.S. at 222 (emphasis added).

In *Sandin*, the inmate brought a procedural due process claim regarding placement in segregated confinement for 30 days in connection with a disciplinary proceeding. *Sandin* rejected the previously employed approach for evaluating whether there was a state-created liberty interest by looking at the mandatory language of prison regulations, and instead directed that it is more important to look at the "nature of the deprivation." *Sandin*, 515 U.S. at 481. In this regard, *Sandin* held that liberty interests created by the state are generally limited to "freedom from restraints which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 483-84. In *Sandin,* the Supreme Court concluded the inmate had no liberty interest

protecting against the placement in segregated confinement for 30 days as a result of a disciplinary proceeding because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence." *Id*. at 485.

In sum, to establish a due process claim related to placement in administrative segregation, an inmate must therefore show that the classification resulted in conditions that amount to an "atypical and significant hardship in relation to the ordinary incidents of prison life." The "atypical and significant hardship" test is the focus of the court's inquiry, "even in the face of relevant prison regulations." *See Chappell*, 706 F.3d at 1064.

Assuming the inmate demonstrates a protected liberty interest is implicated, the court will then analyze whether the inmate received the process he was due. In the context of placement in administrative segregation for non-punitive reasons, the inmate must be given notice of the reason for the segregation and be provided, within a reasonable time after such placement, with an informal, non-adversary review of the evidence justifying the decision to segregate the inmate. *See Hewitt*, 459 U.S. at 476, *abrogated in part on other grounds in Sandin v. Connor*, 515 U.S. 472 (1995); *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986), *abrogated in part on other grounds in Sandin v. Connor*, 515 U.S. 472 (1995).

Unlike a disciplinary proceeding, an inmate is not entitled to "detailed written notice of charges, representation of counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Toussaint*, 801 F.2d at 1100-01.

After being placed in segregation, prison officials must periodically review the initial placement. *See Hewitt*, 459 U.S. at 477 n. 9 (noting this does not necessarily require the submission of any additional evidence or statements).

7

## B. Analysis

Plaintiff was transported to an outside hospital after an incident where he was attacked by another inmate, and was returned to NNCC on April 28, 2016.

On April 28, 2016, Plaintiff was provided notice he was being moved to a lock up area of NNCC pending investigation of the inmate on inmate assault. (ECF No. 29-2 at 2.) Plaintiff signed this document that day. (*Id.*) The next day, an administrative segregation classification results notice indicates that Plaintiff requested to be classified as general population, but this was disapproved because he was placed in administrative segregation pending an investigation after he was involved in an altercation with another inmate. (ECF No. 29-3 at 2.) Plaintiff acknowledged receipt of the notice on April 29, 2016, indicated he was placed in administrative segregation for his safety after the assault. (ECF No. 29-4 at 2.)

Jarrett Zacharias is employed by NDOC's Office of Inspector General as a criminal investigator. He states that investigations involving assault and/or physical violence often necessitate assigning an inmate to administrative segregation during an investigation to protect the integrity of the investigation and for the safety of the facility by separating the inmate from the rest of the prison population. Administrative segregation is a non-punitive status. (Zacharias Decl., ECF No. 29-5.)

A case note chronology by Jason Meares on April 29, 2016, indicates that a due process hearing was held on April 29, 2016. Plaintiff was informed of his rights and the purpose of the hearing. Plaintiff was placed in administrative segregation following the altercation, and was admitted to the infirmary. He would remain in administrative segregation for his own safety and the security of the institution pending investigation of the altercation. (ECF No. 20-6 at 3.)

1    Plaintiff remained in the regional medical facility at NNCC for five days. He was then
2 transferred to housing unit 7b at NNCC in administrative segregation on May 3, 2016.
3    A psychological administrative evaluation was completed by Carla Murakami on May
4 18, 2016. (ECF No. 29-6 at 4; ECF No. 29-1 at 11). Another administrative segregation
5 psychological evaluation was completed on June 1, 2016. (ECF No. 29-6 at 5; ECF No. 29-1 at
6 11.)
7    Case notes by Powers indicate that a reclassification hearing was held on July 28, 2016.
8 Plaintiff was not present, but he was seen earlier at his cell door and was aware of the
9 proceeding. It was noted that Plaintiff was placed in administrative segregation while the
10 investigation of the altercation ensued, and the investigation was now complete. It was
11 recommended that he be changed to medium custody and be transferred to Warm Springs
12 Correctional Center (WSCC). (ECF No. 29-6 at 6, 7; ECF No. 29-1 at 11.) A follow up case note
13 on August 2, 2016, states that Plaintiff was approved for this classification. (ECF No. 29-1 at
14 11.) Plaintiff had another administrative segregation psychological evaluation by Murakami on
15 August 3, 2016. (ECF No. 29-6 at 8; ECF No. 29-1 at 11.) Plaintiff was received at WSCC on
16 August 4, 2016. (ECF No. 29-1 at 11; ECF No. 29-6 at 9.)
17    Plaintiff argues that he was not given due process. He disputes that he received written
18 notice of his placement in administrative segregation without addressing the fact that his
19 signature appears on the notice indicating he did in fact receive it. While he claims the
20 administrative classification notice is false, he provides no evidence to support his claim.
21    Plaintiff states that he was in the infirmary for five days so he could not have been
22 medically cleared for placement in administrative segregation; however, his own grievance
23 documentation reflects that he was classified for administrative segregation while he was still in

the infirmary, and that classification stood until the investigation was completed and he was re-classified for medium custody. (ECF No. 33 at 67.)

Plaintiff claims that he was not notified why he was in administrative segregation, but this is directly refuted by the forms he signed on April 28 and 29, 2016. In addition, Plaintiff acknowledged in his own grievance that he met with Mears on April 29, 2016, who initiated Plaintiff's induction into administrative segregation and informed Plaintiff it was a formal hearing. (ECF No. 33 at 64.)

Insofar as Plaintiff argues that his initial placement in administrative segregation was not periodically reviewed, Plaintiff does not specifically address Defendants' evidence that he was advised of a reclassification proceeding that took place at the end of July 2016, where he was advised he had been in administrative segregation pending the completion of the investigation of the incident. At that point, the investigation was complete and Plaintiff was reclassified as medium custody and submitted for transfer to WSCC. While this may have been more than the 30-days for review that NDOC's regulations provide, that does not mean it is constitutionally deficient, particularly here, where there is no evidence that Plaintiff faced an atypical and significant hardship while confined in administrative segregation for roughly three months.

In his response to Defendants' motion Plaintiff states that he faced an atypical and significant hardship; however, he does not assert any facts to support that conclusion. He briefly mentions recreation and a lack of human contact, but provides no factual information about the conditions he claims to have faced in administrative segregation. Therefore, there is no evidence he faced an atypical and significant hardship while in administrative segregation so as to implicate a liberty interest and trigger any procedural protections.

Finally, Plaintiff argues that he did not receive the process he is guaranteed under *Wolff v. McDonnell*, 418 U.S. 539 (1974); however, *Wolff* discusses the process that is due to an inmate in connection with a disciplinary hearing. Here, it is undisputed Plaintiff was placed in administrative segregation pending an investigation of the altercation, and not related to a disciplinary proceeding. Therefore, the procedural protections outlined in *Wolff* do not apply.

In conclusion, the court finds that there is no evidence before the court that Plaintiff was subject to an atypical and significant hardship when he was placed in administrative segregation for roughly three months pending the investigation of the incident where Plaintiff was attacked by another inmate. Even if Plaintiff's confinement in administrative segregation did implicate a protected liberty interest, Plaintiff has not raised a genuine dispute of material fact in response to Defendants' evidence that Plaintiff received the process he was due. Therefore, summary judgment should be granted in Defendants' favor.

In light of this conclusion, the court need not reach Defendants' exhaustion and qualified immunity arguments.[2]

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order:

(1) **DISMISSING WITHOUT PREJUDICE** the Eighth Amendment failure to protect claim against Does 1 and 2 as a result of Plaintiff's failure to timely identify these defendants; and

---

[2] Defendants argue Plaintiff did not properly exhaust administrative remedies because he did not raise the classification issue in a grievance within 10 days as required under AR 740.05.4.B. (ECF No. 29-7 at 6.) Plaintiff is correct that AR 740.11.2 also provides that "timeframes" do not apply if the inmate has been transferred. (ECF No. 29-7 at 13.) That provision is ambiguous as to whether it is referring to all "timelines," in which case Plaintiff would not have to abide by the 10-day timeline when he was transferred, or whether it is referring to "timelines" for appeals of a lower level grievance or responses to grievances.

11

(2) **GRANTING** Defendants' motion for summary judgment (ECF No. 29) and entering judgment in favor of Defendants Powers, Moyle, Henley, and Castro.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: January 6, 2021

_____
William G. Cobb
United States Magistrate Judge